**In re William A. EADIE, Debtor.**

**Richard L. BEND, D.C., K.S.J. Murkowski, D.C., and S.S. White, D.C., and Ronald Semlow, D.C., Plaintiffs,**

v.

**William A. EADIE, Defendant.**

**Bankruptcy No. 83–04948–R.**
**Adv. No. 84–0128–R.**

United States Bankruptcy Court,
E.D. Michigan.

Aug. 6, 1985.

Donald J. Gasiorek, Southfield, James O'Toole, Sterling Heights, for plaintiffs.

Alan P. Goldstein, Southfield, for defendant.

## ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

STEVEN W. RHODES, Bankruptcy Judge.

This matter is before the Court on a motion for summary judgment filed by plaintiffs Richard L. Bend, K.S.J. Murkowski, and S.S. White.[1] They contend that a prior judgment against the defendant precludes his relitigation of the issues in this case. The Court agrees and grants the motion for summary judgment.

### I.

On July 27, 1983, the plaintiffs instituted an action in Wayne County Circuit Court against William Eadie. The complaint alleged that Eadie fraudulently represented that he could organize a concert to raise funds for the Council for Scoliosis, a charitable organization in which the plaintiffs are involved. The complaint further alleged that in reliance upon these representations, the plaintiffs advanced $42,250.00 to Eadie, and that such funds were used by Eadie for his personal benefit. On October 23, 1983, the state court entered a default judgment in favor of the plaintiffs because of the defendant's failure to cooperate in the discovery process. A constructive trust was imposed on the defendant's property in the amount of $42,250.00 plus interest at the statutory rate.

Thereafter, Eadie filed a petition in bankruptcy pursuant to the Bankruptcy Code, 11 U.S.C. § 101 et seq. On February 22, 1984, this adversary proceeding was commenced, claiming that the debt evidenced in the prior judgment is nondischargeable under 11 U.S.C. § 523(a)(2) as a debt obtained through false representations.

In this motion, the plaintiffs contend that the state court judgment is entitled to collateral estoppel effect in this dischargeability proceeding and that it prevents relitigation of the issues of fraud and misrepresentation. The plaintiffs contend that collateral estoppel applies because the precise issues that were raised in the state court proceedings would have to be addressed to determine the issue of dischargeability. *Spilman v. Harley*, 656 F.2d 224 (6th Cir. 1981).

Noting that the doctrine of collateral estoppel also requires that the identical issue was actually litigated in the prior proceeding, *Spilman v. Harley, supra*, the plaintiffs contend that the prior state court judgment was a decision on the merits because the parties might have had their controversy determined if they had presented all the evidence and the court had applied the law. *Gursten v. Kenney*, 375 Mich. 330, 134 N.W.2d 764 (1965). In this regard, the plaintiffs contend that the state court obtained jurisdiction over Eadie, that Eadie had retained an attorney to represent him in the state court proceedings, and that he could have raised any applicable defenses in those proceedings. Thus, the plaintiffs conclude that the fact that a default judgment was entered does not deprive the judgment from being characterized as a decision on the merits.

The debtor contends that because the bankruptcy court has exclusive jurisdiction to determine the dischargeability of a debt, a state court judgment does not operate as res judicata on this issue, and summary judgment is therefore not appropriate.

### II.

In *Spilman v. Harley, supra*, the Court of Appeals for the Sixth Circuit addressed the issue of whether a bankruptcy court

---

1. Plaintiff Ronald Semlow did not join in this motion because he was not a party in the underlying action which forms the basis for the relief sought in the motion. For convenience, the term "plaintiffs" as used herein will refer only to Bend, Murkowski, and White.

must consider every question of dischargeability of a debt *de novo,* or whether the parties are collaterally estopped by a prior court judgment determining the nature of the debt. The court began by citing *Brown v. Felsen,* 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979), in which the Supreme Court recognized the exclusive jurisdiction of the bankruptcy courts to determine dischargeability, and held that a bankruptcy court is not precluded by *res judicata* from considering evidence on an issue which could have been litigated in the prior state court proceeding but was not. The *Spilman* court noted, however, that *Brown v. Felsen* expressly left open the question of whether collateral estoppel would apply.

Noting that the lower courts disagree as to whether collateral estoppel should apply in dischargeability proceedings, the *Spilman* court concluded that its application "is logically consistent with the Supreme Court's decision in *Brown* and the exclusive jurisdiction of the bankruptcy courts while at the same time encouraging judicial economy." 656 F.2d at 227. The court stated, however, that this doctrine requires that the precise issue in the later proceedings was raised in a prior proceeding, that the issue was actually litigated, and that the determination was necessary to the outcome. 656 F.2d at 228. In discussing these requirements, the court stated:

> If the important issues were not actually litigated in the prior proceeding, *as is the case with a default judgment,* then collateral estoppel does not bar relitigation in the bankruptcy court. *See Commonwealth of Massachusetts v. Hale,* 618 F.2d 143, 146 (1st Cir.1980); *Matter of McMillan,* 579 F.2d 289, 293 (3d Cir. 1978); *[Matter of] Pigge, supra,* 539 F.2d [369] at 373 [1976]; *In re Cooney,* 8 B.R. 96, 98–99 (Bkrptcy., W.D.Ky.1980); *In re Richards,* 7 B.R. 711, 714 (Bkrtcy., S.D.Fla.1980); *In re Ashley,* 5 B.R. 262, 264 (Bkrtcy., E.D.Tenn.1980); *In re McKenna,* 4 B.R. 160, 162 (Bkrtcy., N.D. Ill.1980); *Matter of Mallory,* 1 B.R. 201, 202 (Bkrtcy., N.D.Ga.1979).

Thus, before applying the doctrine of collateral estoppel, the bankruptcy court must determine if the issue was actually litigated and was necessary to the decision in the state court. To do this, the bankruptcy court should look at the entire record of the state proceeding, not just the judgment, *see [Matter of] Herman, supra,* 6 B.R. [352] at 357 [ (D.Ct., S.D.N.Y.1980) ]; *National Homes [Corp. v. Lester Industries, Inc.] supra,* 336 F.Supp. [644] at 648 [ (W.D.Va.1972) ]; *Webster, supra,* 1 B.R. at 63, or hold a hearing if necessary, *see [Matter of] Ross, supra,* 602 F.2d [604] at 608 [ (3d Cir.1979) ]. 656 F.2d at 228. (Emphasis added).

In *In re Byard,* 47 B.R. 700 (Bankr.M.D. Tenn.1985), the plaintiff requested that a state court default judgment against the debtor be given collateral estoppel effect in the dischargeability action before the court. The plaintiff's argument was based on the "full faith and credit" statute, 28 U.S.C. § 1738, which provides in pertinent part:

> The ... judicial proceedings of any court of any state ... shall have the same full faith and credit in every court within the United States and its Territories and Possession as they have by law or usage in the courts of such state.

In *Byard,* the court noted that the principles of "full faith and credit" have undergone re-examination and clarification in several recent Supreme Court opinions, and that the rule as stated by the Supreme Court is that "a federal court must give to a state court judgment the same preclusive effect as would be given that judgment under the law of the state in which the judgment was rendered." 47 B.R. at 701–02 (*citing Migra v. Warren City School District Board of Education,* 465 U.S. 75, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984); *Marrese v. American Academy of Orthopaedic Surgeons,* —— U.S. ——, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985); *McDonald v. West Branch,* 466 U.S. 284, 104 S.Ct. 1799, 80 L.Ed.2d 302 (1984); *Kremer v. Chemical Construction Corp.,* 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982), *reh'g denied,* 458 U.S. 1133, 103 S.Ct. 20, 73 L.Ed.2d 1405 (1982). *See also City of Can-*

*ton, Ohio, et al. v. Maynard,* 766 F.2d 236, (6th Cir., 1985)).

The court stated, however, that federal courts in bankruptcy cases, including the court in *Spilman v. Harley, supra,* had overlooked this general rule and have applied federally developed rules of issue preclusion without regard to the relevant state law. 47 B.R. at 703–04. Further, the court stated that this practice can have significant effects:

This adversary proceeding illustrates the very real effect on litigants of selecting a federal rule for application of collateral estoppel rather than the test which would be applied by the state of judgment. As demonstrated below, it is the law of Kansas that Harris' default judgment would be entitled to issue preclusive effect on the factual issues decided by the state court. However, applying the federal rule articulated in *Spilman* leads to the opposite result. The "actually litigated" requirement is the problem for the plaintiff. The *Spilman* court noted that "if the important issues were not actually litigated in the prior proceeding, as is the case with a default judgment, then collateral estoppel does not bar relitigation in the bankruptcy court." *Spilman* at 228. 47 B.R. at 704.

Thus, the court predicted that if the Court of Appeals were to consider the issues presented in *Spilman* in light of recent developments in the law of full faith and credit, the court would address the collateral estoppel question differently. 47 B.R. at 704–05.

Specifically, the court held that the Supreme Court in *Marrese v. American Academy, supra,* set forth the manner in which federal courts must determined the preclusive effect of state court judgments. In *Marrese,* the Supreme Court had held that once the preclusive effect is determined under the law of the state of origin, the court must determine whether any federal statute expressly or impliedly creates an exception to the usual application of § 1738. 105 S.Ct. at 1331–35.

On the facts before it, the *Byard* court determined that the default judgment

would preclude relitigation under Kansas law. Applying the second step of the *Marrese* analysis, the court further held:

In the opinion of this court, there is nothing in the Bankruptcy Code or Congressional statements of intent in the enactment of § 523 indicating that some kinds of state court judgments—those that are fully and actually litigated by the state court—can have issue preclusive effect in § 523 litigation but other kinds of state court judgments cannot— for example, a default judgment like the one here at issue. There is no compelling statement of federal bankruptcy law which expressly or impliedly excepts to the normal operation of § 1738 where the state court judgment for which issue preclusive effect is sought is a default judgment. The implied repealer of § 1738 in bankruptcy proceedings recognized by the Supreme Court in *Brown* and acknowledged by the Supreme Court in *Marrese* was restricted by the Supreme Court in *Brown* to *claim* preclusion. Since the decision in *Brown,* the implied repealer exception to § 1738 has been very narrowly construed by the Supreme Court. *See, e.g., Kremer,* 456 U.S. at 468–469, 102 S.Ct. at 1890–1891.

There is nothing about the issues here sought to be precluded which suggests intervention of any strong federal bankruptcy policy prohibiting application of § 1738. Fraud, conversion and misapplication of funds are issues well within the regular competence and experience of state courts. Under these circumstances, it is the holding of this court that there is no compelling statement of federal bankruptcy law which would expressly or impliedly forbid application of § 1738 to give issue preclusive effect to this default judgment. 47 B.R. at 707.

■ This Court finds the analysis of *In re Byard* quite persuasive and adopts it. Therefore, the issue before the Court is whether the Michigan courts would preclude relitigation of the issues raised in this case as a result of the earlier judgment.

### III.

#### A.

■ Under Michigan law, the doctrine of collateral estoppel applies only where the same ultimate issues underlying a first action are involved in a second action, where the parties have had a full opportunity to litigate the ultimate issues in the former action, and where there is mutuality of estoppel such that both litigants in the second suit are bound by the judgment rendered in the first suit. Further, collateral estoppel applies to default judgments; however, the default judgment is conclusive only as to those matters essential to support the judgment. *Rohe Scientific Corporation v. National Bank of Detroit,* 133 Mich.App. 462, 467, 350 N.W.2d 280 (1984) (*citing Detroit Auto Inter-Insurance Exchange v. Higginbotham,* 95 Mich. App. 213, 219, 290 N.W.2d 414 (1980), *on rehearing,* 135 Mich.App. 777, 355 N.W.2d 883 (1984)); *Rinaldi v. Rinaldi,* 122 Mich. App. 391, 333 N.W.2d 61 (1983).

In *Braxton v. Litchalk,* 55 Mich.App. 708, 223 N.W.2d 316 (1974), the plaintiffs appealed from the trial court's ruling that a common pleas default judgment rendered against them had collateral estoppel effect, contending that a default judgment is not a decision on the merits. The *Braxton* court noted that there is authority for the proposition that where the issues were not actually litigated in a prior action but were determined by a default judgment, the prior action is not conclusive as to those issues in the subsequent action. Nevertheless, the court concluded that such cases represent the minority view. 77 A.L.R.2d 1410, § 3(a). The *Braxton* court then cited *Sahn v. Estate of Brisson,* 43 Mich.App. 666, 204 N.W.2d 692 (1972), to illustrate the liberal application of the "actually litigated" test under Michigan law:

A question has not been actually litigated until put in issue by the pleadings, submitted to the trier of fact for a determination, and thereafter determined. *Talcott, Inc. v. Allahabad Bank, Ltd.,* 444 F.2d 451 (CA 5, 1971).

In the prior Delta County suit, the question of whether the repairs to the bulldozer were authorized by the defendant herein was put in issue by the pleadings. The trial court in that case had competent testimony before it upon which to grant a default judgment. The court, based upon the testimony and exhibits presented, determined all of the issues posed by the pleadings. Thus the issues presented by the plaintiff's complaint (defendant herein) were actually litigated and we so hold.

Moreover, the entry of a default judgment is equivalent to an admission by the defaulting party to all of the matters well pleaded. *Lesisko v. Stafford,* 293 Mich. 479 [292 N.W. 376] (1940); 7 Callaghan's Michigan Pleading & Practice (2d ed.), § 44.06, p. 26. 43 Mich.App. at 670–71, 204 N.W.2d 692.

The *Braxton* court concluded:

In view of the extensive attention given this matter by the trial court, the final entry of a default judgment and failure of defendant to appeal therefrom, we must accept as true the matters pleaded in the Bendix complaint and must examine the merits of the case before us. Our conclusion in this regard should not be construed as going so far as to hold that every default judgment, no matter under what circumstances it is taken, may result in collateral estoppel, but only that in the instant case the issues were sufficiently litigated to make the doctrine of collateral estoppel apply. 55 Mich.App. at 717, 223 N.W.2d 316.

#### B.

■ Applying this authority, the Court must conclude that the earlier state court judgment would be given preclusive effect in the Michigan courts. There is no doubt but that the very same fraud and false representations are alleged; a comparison of the prior complaint with the present complaint amply demonstrates this, and the debtor does not contend otherwise.

Moreover, that the debtor was given every opportunity to litigate these issues is documented in the judgment itself:

This matter having come before the Court on the Motion of Plaintiffs, pursuant to the provisions of G.C.R. 1963, 313.-4, for an Order striking the Answer of the Defendant and for entry of Judgment by default against the Defendant; and it appearing to the Court that Defendant has failed to appear for deposition on two properly noticed occasions; and counsel for Defendant advising the Court that he would not appear before the Court to oppose the Motion of Plaintiffs; and the Court being more fully advised in the premises;

Finally, that the debtor's conduct was construed as judicial admission of the allegations of the complaint is also documented in the judgment:

NOW THEREFORE, IT IS HEREBY ORDERED AND ADJUDGED that Defendant's Answer and Affirmative Defenses to the Complaint of the Plaintiffs be and hereby is stricken.

Therefore, the Court must conclude that the issue of the debtor's misrepresentation was actually litigated, even though the judgment was a judgment by default.

Based upon the authority cited above, it follows that the Michigan courts would preclude the defendant's relitigation of the issues raised in this case. Based upon *In re Byard*, and 28 U.S.C. § 1738, the defendant is therefore precluded from relitigating these issues in this Court. Accordingly, the plaintiffs are entitled to a summary judgment.

An appropriate order may be submitted.