NOT RECOMMENDED FOR PUBLICATION
File Name: 16a0518n.06

No. 15-1859

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Sep 02, 2016
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| JAMES SCOTT; HELEN SCOTT; JAMES SCOTT d/b/a BEST WAY AUTO SALES, | ) | |
| | ) | |
| Plaintiffs-Appellants, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| OFFICER KEVIN REIF; LIEUTENANT RAY | ) | COURT FOR THE EASTERN |
| COLLINS; CITY OF REDFORD POLICE | ) | DISTRICT OF MICHIGAN |
| DEPARTMENT; GENE'S TOWING, INC.; CITY | ) | |
| OF REDFORD,[1] | | |
| | | |
| Defendants-Appellees. | | |

**BEFORE: GILMAN, WHITE, and STRANCH, Circuit Judges.**

**HELENE N. WHITE, Circuit Judge.** James and Helen Scott, owners of Best Way

Auto Sales (Best Way), brought this action against a number of parties, alleging violations of

42 U.S.C. § 1983, the Racketeer Influenced and Corrupt Organizations (RICO) Act, 18 U.S.C.

§ 1962, and Michigan law. Defendants City of Redford, Officer Kevin Reif, and Lieutenant Ray

Collins moved to dismiss, arguing these claims are barred by res judicata. The district court

granted the motion, concluding, inter alia, that the Scotts could have but did not raise the instant

claims in an earlier state-court mandamus action arising out of the same incident. We **AFFIRM**.

---

[1] Charter Township of Redford was improperly named in the complaint as the City of Redford. In addition, although the Scotts included Appellee City of Redford Police Department in their appeal, they previously stipulated to the dismissal of the City of Redford Police Department in their response to the City's motion to dismiss. Finally, although the Scotts appealed from the stipulated order dismissing Gene's Towing, Inc.—which was also the final order closing the case—they have no outstanding claims against Gene's Towing.

**I.**

**A. Allegations**

Best Way, a business licensed to sell used cars, scrapped automobiles, and auto parts, purchases junk cars from independent-contractor tow-truck drivers and other sources. On February 2, 2012, officers from the Western Wayne Auto Theft Unit (WWATU)[2] executed a search warrant at Best Way, and at the home of James and Helen Scott, Best Way's owners. The warrant was issued based on an affidavit by WWATU member and Redford Police Officer Defendant Kevin Reif (Reif), attesting, among other things, that Best Way had sold stolen vehicles for scrap money. The Scotts contend that the warrant contained material omissions and misrepresentations, that police purposely searched their home when the Scotts were not there, and that, although the warrant did not mention a safe or authorize the seizure of cash, police seized $180,000 from the Scotts' safe but reported the amount of cash seized from the safe as only $100. During the search, Lieutenant Ray Collins (Collins), a Michigan State Police Officer and Reif's supervisor on the task force, allegedly said, "Let's take everything so we can make sure he won't be able to open for business on Monday." (Compl., PID 3–4, 9.)

Following the search and seizure, the Wayne County Prosecutor's Office denied the WWATU's request for an arrest warrant for James Scott. The Scotts allege that WWATU officers thereafter continued to investigate "in a way that would harass and damage" the Scotts, specifically by soliciting tow-truck drivers to testify against the Scotts, and offering the drivers immunity in an effort to fabricate evidence. The State Attorney General's Office then also declined to prosecute.

---

[2] WWATU and the Downriver Area Narcotics Organization (DRANO) are part of a multi-jurisdictional group of police forces that investigate drug and auto-theft offenses.

The Scotts allege that their business has suffered as a result of these actions because tow-truck drivers "will no longer do business with [Best Way] for fear of arrest, prosecution or retaliation by the officers." (*Id.*, PID 10.) The Scotts also contend police have refused to return the property seized during the raid, including sixteen luxury vehicles, six trucks, and the alleged $180,000 cash. They also allege they cannot retrieve the vehicles unless they pay storage fees in excess of $50,000.[3]

### B. State Mandamus Action

On April 20, 2012, the Scotts filed a petition for a writ of mandamus in the Wayne County Circuit Court against Reif, Collins, unnamed police officers, the State of Michigan, and the Michigan State Police Department, seeking the return of property seized during the execution of the search warrants, punitive damages for Reif's material omissions and misrepresentations in the warrant affidavit, and further "damages for intentional infliction of emotional and financial distress and interference with contractual relations resulting from" the searches and seizures. (Mandamus Pet., PID 482–502.) Following a hearing on July 10th, the court ruled in the defendants' favor from the bench, orally granting the motion for summary disposition because the case involved disputed facts—including that the police claimed to have returned all the items and not to have taken $180,000 in the first instance—and thus the defendants had no clear legal duty to act, which precluded granting the writ. On July 17, 2012, the court issued an order granting the motion, dismissing the complaint with prejudice, and "dispos[ing] of all pending claims and clos[ing] the case." (Order, PID 505–06.)

---

[3] At argument, the parties informed the court that, per a settlement agreement, the Scotts received their property from Gene's Towing without paying storage fees.

On August 6, 2012, the Scotts filed motions for reconsideration and to amend their complaint to add claims for violations of § 1983 and state law. The Scotts sought reconsideration on the basis that they had not had an opportunity to amend their pleadings, noting that their additional claims potentially could be barred by res judicata in a future action.

The court denied the motion for reconsideration without a hearing. *Scott v. Mich. State Police Dep't*, No. 312378, 2013 WL 6670855, at *2 (Mich. Ct. App. Dec. 17, 2013) (per curiam). At a hearing on the motion to amend, the Scotts argued, inter alia, that the parties had acknowledged at the prior hearing that the plaintiffs had other claims, and that refusal to allow amendment could result in a "substantial possibility" that their claims would be barred by res judicata in a future action. (Sept. 14 Hr'g, PID 960, 965–66.) The court, noting that plaintiffs had "stipulated to the entry of an order dismissing the case with prejudice and stipulated that the order [would] dispose of all pending claims and close the case," concluded there was nothing to amend and denied the motion.[4] (*Id.*, PID 966–70.)

The Michigan Court of Appeals affirmed the denial of mandamus and of the motions. *See generally Scott*, 2013 WL 6670855. With respect to the motions, the court held that the trial court's decision to deny the motion to amend was reasonable because the Scotts did not seek to amend their complaint until twenty days after "the order dismissing the case was entered, even though they were clearly aware of other potential claims and the trial court's concerns regarding mandamus," and even "stipulated to the order closing the case." *Id.* at *4. The court also upheld

---

[4] Although the court referred to this as a stipulated order, the order was "Stipulated as to form and approved for entry." (Order, PID 506.) In Michigan, a stipulation as to form—rather than form and substance—concedes only that the order correctly embodies the ruling of the court. *See In re Peter Solomon Marital Trust*, No. 239232, 2003 WL 21920387, at *2 (Mich. Ct. App. Aug. 12, 2003). "It does not imply that the party necessarily agrees with the court's decision." *Id.* Nonetheless, the plaintiffs did stipulate to dismissal with prejudice.

the trial court's denial of the Scotts' motion for reconsideration, reasoning, inter alia, that "because plaintiffs' res judicata argument could have been brought before the trial court's original order, the trial court was under no obligation to consider plaintiffs' new legal theory." *Id.* at *5.

## C. Federal Case

On February 10, 2014, the Scotts filed the instant action in the U.S. District Court for the Eastern District of Michigan, alleging violations of state law, § 1983, and the RICO Act. The complaint's factual allegations are nearly identical to those in the state mandamus action, with some added allegations that WWATU officers continued to investigate after the search in a manner that harassed the Scotts. The complaint names as defendants Reif, Collins, the State of Michigan, a number of cities participating in DRANO, John and Jane Doe officers participating in the WWATU, and Gene's Towing.

After a number of parties had been dismissed without prejudice by stipulation, Reif, the City of Redford Police Department, the City of Redford, and Collins moved for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), arguing the Scotts' claims are barred by res judicata. Following a hearing, the district court granted the motions to dismiss.

The Scotts moved for reconsideration, arguing, inter alia, that the district court erred when it failed to address their argument that Michigan Court Rule 3.301(B)—a rule they contend makes joinder of claims permissive, but not mandatory in extraordinary writs actions—rendered res judicata inapplicable. They also filed a motion for permission to file an interlocutory appeal if the district court denied their motion for reconsideration.

The district court denied both motions on March 31, 2015, concluding with respect to the motion for reconsideration "that Plaintiffs are re-hashing the same arguments made in their

previous submissions to the Court [and] have not demonstrated a palpable defect by which the Court was misled." (Order, PID 1543–46.) Thereafter, the parties stipulated to the dismissal of the majority of the remaining defendants.

On April 29, 2015, a magistrate judge denied the Scotts' final pending motion before the court, a motion to amend the complaint to add four new defendants. The parties then stipulated to dismissal of the last remaining defendant, Gene's Towing, Inc. This appeal followed.[5]

**II.**

As a preliminary matter, the Scotts have defended against hypothetical challenges to our jurisdiction that might be raised because they stipulated to dismissal of the final defendant in the case and because a number of defendants were dismissed without prejudice. Appellees, however, do not challenge jurisdiction. And because the Scotts concede that all dismissed claims are now time-barred, any challenge would lack merit.[6]

---

[5] On July 20, 2015, the Scotts appealed from the final order in the case and "all orders thereunder." (Notice of Appeal, PID 1698.) On August 14, 2015, they amended the Notice of Appeal to appeal the final order and "all orders thereunder in the above action" except the stipulated dismissals. (PID 1707–08.)

[6] Because an order "that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties" is not necessarily final, *see* Fed. R. Civ. P. 54(b), courts have held that a district court's decision is not final where some of the defendants were dismissed without prejudice. *See Arrow Gear Co. v. Downers Grove Sanitary Dist.*, 629 F.3d 633, 636 (7th Cir. 2010); *Morton Int'l, Inc. v. A.E. Staley*, 460 F.3d 470, 476–77 (3d Cir. 2006). However, where, as here, the appellants concede their claims dismissed without prejudice are time-barred, courts have found that dismissals without prejudice do not render an action non-final. *See Arrow Gear Co.*, 629 F.3d at 636–37; *Tiernan v. Devoe*, 923 F.2d 1024, 1031 (3d Cir. 1991). In addition, although "[g]enerally, a plaintiff who requests or consents to the dismissal of his action cannot appeal that dismissal because it is not an involuntary adverse judgment," *Dearth v. Mukasey*, 516 F.3d 413, 415 (6th Cir. 2008), that rule is not applicable where "the dismissal is with prejudice and 'designed only to expedite review' of a prior order having the effect of a dismissal," *Laczay v. Ross Adhesives, a Div. of Conros Corp.*, 855 F.2d 351, 354 (6th Cir. 1988).

**III.**

The Scotts argue the district court erred in granting Defendants' 12(c) motions and finding their claims barred by res judicata.

**A.**

This court reviews de novo a district court's decision to grant a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). *Rush v. Mac*, 792 F.3d 600, 603 (6th Cir. 2015). In conducting this inquiry, the "court may take judicial notice of other court proceedings without converting the motion into one for summary judgment." *See Buck v. Thomas M. Cooley Law Sch.*, 597 F.3d 812, 816 (6th Cir. 2010).

When determining the preclusive effect of a state-court judgment, federal courts must look to that state's law and give the "judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City School Dist.*, 465 U.S. 75, 81 (1984); *Young v. Twp. of Green Oak*, 471 F.3d 674, 680 (6th Cir. 2006). Under Michigan law, res judicata, or claim preclusion, bars a subsequent action when "(1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first." *Adair v. State*, 680 N.W.2d 386, 396 (Mich. 2004).

**B.**

In their opening brief on appeal, the Scotts concede the state-court mandamus action was decided on the merits. (Scotts' Br. 41 ("The Michigan trial court decided the state court action on the merits, and the Michigan Court of Appeals affirmed the decision.").) Thus, we do not address this issue, notwithstanding the Scotts' belated attempt to contest it at oral argument. *See Demyanovich v. Cadon Plating & Coatings, L.L.C.*, 747 F.3d 419, 434 n.6 (6th Cir. 2014) ("By failing to present any facts or argument relating to his . . . claim in his opening brief,

Demyanovich has waived the claim on appeal."); *Enertech Elec., Inc. v. Mahoning Cty. Comm'rs*, 85 F.3d 257, 259 (6th Cir. 1996) ("[I]ssues not raised in appellant's opening brief will not be considered on appeal.").

Similarly, although the Scotts mention in their brief that the federal action names different defendants and contend in one cursory sentence that "Defendants do not meet the same parties or their privies requirement," (Scotts' Br. 41), they fail to support this statement with any argument or citation to authority. Further, the City of Redford—the only party granted dismissal on the basis of res judicata that was not named in the mandamus action—argued in response that it was in privity with Reif, a Redford police officer, and the Scotts did not file a reply. Thus, the Scotts' privity argument is also waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."). Accordingly, we proceed to consider the element of res judicata challenged by the Scotts on appeal—whether the instant claims could have been raised and resolved in the state mandamus action.

## C.

The third element of res judicata looks to whether the matter contested in the subsequent action was or could have been resolved in the first action. *Adair*, 680 N.W.2d at 396. To determine whether this element is satisfied, Michigan uses a broad "transactional" test, which "provides that the assertion of different kinds or theories of relief still constitutes a single cause of action if a single group of operative facts give rise to the assertion of relief." *Id.* at 397 (quoting *River Park, Inc. v. City of Highland Park*, 703 N.E.2d 883, 891 (Ill. 1998)). "Whether a factual grouping constitutes a transaction for purposes of res judicata is to be determined pragmatically, by considering whether the facts are related in *time, space, origin or motivation*,

[and] whether they form a convenient trial unit." *Id.* at 398 (emphasis and alteration in original) (quoting 46 Am. Jur. 2d, Judgments 533, p. 801); *see also Marketplace of Rochester Hills Parcel B, LLC v. Comerica Bank*, 871 N.W.2d 710 (Mich. 2015). Michigan courts apply res judicata broadly, barring not only claims already litigated, "but also every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not." *Adair*, 680 N.W.2d at 396; *see also Dart v. Dart*, 597 N.W.2d 82, 88 (Mich. 1999); *Gose v. Monroe Auto Equip. Co.*, 294 N.W.2d 165, 167–69 (Mich. 1980).

No Michigan or federal law precluded the Scotts from asserting the instant claims in their mandamus action in state court. Michigan circuit courts are courts of general jurisdiction, Mich. Comp. Laws 600.605, and the state's mandamus rule permits joining other claims in an action for a writ of mandamus, *see* Mich. Ct. R. 3.301(B). Counts one through six and nine of the federal complaint are state- and common-law tort- and contract-based actions that "could have been resolved" in the circuit court. The circuit court also had concurrent jurisdiction over counts seven and eight, alleging § 1983 violations, *Dep't of Treasury v. Campbell*, 411 N.W.2d 722, 723 (Mich. Ct. App. 1986) (per curiam) (holding that "[s]tate courts have concurrent jurisdiction over § 1983 claims"); s*ee also Hess v. West Bloomfield Twp.*, 486 N.W.2d 628, 630–31 (Mich. 1992) (noting that the plaintiff raised both a § 1983 claim and a mandamus claim in his complaint in the circuit court), and count ten, alleging a RICO Act violation, *see Tafflin v. Levitt*, 493 U.S. 455, 458 (1990) (holding that state courts have concurrent jurisdiction over civil RICO claims).

Further, both the state mandamus petition and the federal complaint allege facts arising out of the February 2012 search of Best Way and the Scotts' home. And, although the federal complaint also states allegations regarding the subsequent related investigation, the Scotts make

no argument about why these facts are not related in time or space to the search, or why they would not have made a convenient trial unit.[7] Rather, the Scotts contend they could not have raised the instant claims in their mandamus action because 1) the state court improperly denied them leave to amend the complaint in the mandamus action, and 2) joinder of other claims in the mandamus action was permissive, not compulsory. We address these arguments in turn.

### 1. Denial of Motion to Amend

The Scotts argue that the instant claims could not have been resolved in the state-court action because the state court improperly denied their motion to amend. However, even assuming the state court erred in denying the Scotts' motion to amend as untimely, the Scotts offer no argument for why they could not have brought the claims at an earlier point, such as when they initiated the mandamus action, when the defendants moved for summary disposition, or at the summary disposition hearing when it became clear that the state trial court believed mandamus was not the proper remedy. Nor do they offer any authority for the proposition that the state court's denial of their motion to amend precludes application of res judicata. At argument, counsel for the Scotts conceded that "nothing stopped" the Scotts from raising the instant claims with the mandamus complaint, but asserted that what matters is the "last chance" the plaintiffs had to assert their claims. *See* Oral Arg. at 08:21-09:24. However, counsel was unable to cite any authority—and we are aware of none—to support that contention. Thus, this argument fails.

---

[7] In their brief, the Scotts also assert that some of the facts alleged in the federal complaint arose after the state court granted summary disposition in the mandamus action. However, at argument, the Scotts' counsel acknowledged those assertions do not relate to "new, separate acts of conduct" occurring after dismissal of the mandamus action. *See* Oral Arg. at 36:08-36:31, 37:00-37:36.

### 2. Permissive Joinder

The Scotts next argue that res judicata does not apply because, although they were permitted to join the instant claims in their mandamus action, joinder was not required. It is unclear from the Michigan Court Rules whether joinder was permissive or compulsory in this context, and Michigan courts do not appear to have addressed whether Michigan Court Rule 3.301(B), addressing joinder of claims in mandamus actions, provides for any compulsory joinder at all, or rather treats all joinder as permissive.

We need not further explore this issue, however, because Michigan courts have rejected the argument that res judicata is inapplicable where joinder of claims is not compulsory. *See, e.g.*, *Danou Tech. Park, L.L.C. v. Fifth Third Bank*, No. 309905, 2014 WL 2881028, at *5 (Mich. Ct. App. June 24, 2014) (per curiam) (concluding that "although the [compulsory] joinder rule does not apply, Danou Technical was required to raise this claim in the earlier action under the broadly applied doctrine of res judicata"), *appeal denied sub nom. Danou Tech. Park, LLC v. Fifth Third Bank*, 856 N.W.2d 54 (Mich. 2014); *Engle v. Livonia Firefighters Union, Local 1164*, No. 244334, 2004 WL 817150, at *1 (Mich. Ct. App. Apr. 15, 2004) (per curiam) (rejecting argument that res judicata did not apply where the plaintiff "was not required to join [the] claims under MCR 2.203(A)"); *Boland v. C.D. Barnes Assocs., Inc.*, 337 N.W.2d 581, 581–82 (Mich. Ct. App. 1983) (holding that res judicata barred the plaintiff's claims, over dissent that argued res judicata should not apply because, in earlier action, the plaintiff was permitted but not required to raise the claim as a counterclaim); *Rinaldi v. Rinaldi*, 333 N.W.2d 61, 64 (Mich. Ct. App. 1983) (reasoning, in action for exemplary damages, that although the plaintiff "was not required under the rules to file a counterclaim . . . or cross claim" against the defendants for exemplary damages in prior action, "the principles of res judicata and collateral estoppel may,

nonetheless, be applied if the present cause of action and claims are not sufficiently dissimilar from those involved in the prior actions"). *But see Karakas v. Dost*, 240 N.W.2d 743, 748 (Mich. Ct. App. 1976) (finding claim not barred by res judicata even though it was not raised in prior action because it could have been asserted in prior action as a permissive counterclaim).[8] Thus, we do not find this argument persuasive.

Accordingly, we affirm the district court's judgment that the instant claims against Reif, Collins, and the City of Redford are barred by res judicata.

**IV.**

Finally, the Scotts argue the district court abused its discretion in denying their motion for reconsideration because it failed to address their argument that joinder of other claims in their mandamus action was not compulsory, or their argument that the state's improper denial of their motion to amend precluded application of res judicata.

We review a district court's denial of a motion for reconsideration for abuse of discretion. *In re Greektown Holdings, LLC*, 728 F.3d 567, 573 (6th Cir. 2013). The applicable Eastern District of Michigan local rule provides that reconsideration is appropriate only if the movant shows, inter alia, "that correcting the defect will result in a different disposition of the case." E.D. Mich. Local Rule 7.1(h)(3). For the reasons discussed *supra*, the Scotts' arguments would not have resulted in a different disposition of the case, and thus the district court did not abuse its discretion in denying the Scotts' motion for reconsideration.

**V.**

For these reasons, we **AFFIRM**.

---

[8] The court's ruling in *Karakas* preceded the Michigan Supreme Court's holding clarifying that that the broad application of res judicata is the correct approach. *See Gose*, 294 N.W.2d at 167.